**Opinion filed January 9, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00027-CR

_____

## JOSE GONZALEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 299th District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-DC-07-301684**

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Appellant, Jose Gonzalez, for four counts of aggravated sexual assault of a child younger than fourteen years of age, one count of indecency with a child by contact, and two counts of indecency with a child by exposure. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011), § 22.021 (West Supp.

2013). The jury convicted Appellant of two counts of aggravated sexual assault of a child younger than fourteen years of age. Based on the instructions given in the charge, the jury was not required to determine Appellant's guilt for any of the remaining charged offenses. The jury assessed Appellant's punishment at confinement for fifty years for each of the convictions. The trial court ordered that Appellant's sentences were to run concurrently. We affirm.

Appellant presents six issues on appeal. In his first two issues, he challenges the sufficiency of the evidence. Appellant argues in his third and fifth issues that the trial court erred when it admitted the hearsay testimony of the outcry witness and of the doctor who examined the complainant. In his fourth issue, Appellant alleges that his trial counsel was ineffective when he failed to request an election as to the act upon which the State was relying for conviction. Appellant argues in his final issue that the trial court erred when it did not declare a mistrial after the State wrongly accused Appellant of a prior conviction during the guilt/innocence phase of the trial.

We will first address Appellant's challenge to the sufficiency of the evidence. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE. CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury is entitled

to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).

The evidence at trial showed that the complainant, C.M., was between five and six years old when she met Appellant. C.M.'s mother, A.G., dated Appellant on and off for several years. C.M. testified that Appellant forced her to do things that she did not want to do. At night, on multiple occasions, Appellant came into her room from the bathroom; he was not wearing any clothes. He took off her pants and underwear, put a blanket over her, told her to stop crying, held down her hands, and put his penis in her vagina. When his penis was inside of her vagina, he moved up and down. He breathed hard. It hurt and she cried. Appellant also put his mouth on her vagina and put his tongue inside of her vagina; his hands were on her legs.

On one occasion, he told her, while he was crying, that he was sorry but that he was almost finished. On another occasion, when her brother was next to her on the bed, Appellant put his hand over her mouth and told her not to scream or he would hurt her, her mom, and her brother. C.M. had asked her brother to stay in the room with her because she thought that, if Appellant came in the room, she could easily wake up her brother and prevent Appellant from touching her. Appellant scooted her away from her brother, took off her clothes, and put his penis in her vagina. On several occasions while her mother was at work, Appellant took her to her mother's room and put his penis in her vagina.

C.M. testified that she knew that the abuse should not be happening to her because Appellant was with her mother: "Like why would he do something like that to someone, like, 20 times smaller than him and knowing that it's for -- grownups should be doing that to each other and not a grownup and a child." C.M. tried to keep Appellant from coming in her room by blocking the door with clothes and other items. She also tried to wear extra clothes to make it harder for

Appellant to touch her. She put on an extra pair of panties and pants, but he took off the extra clothes.

At first, C.M. did not tell anyone about what Appellant was doing to her because she was afraid of Appellant. She did not remember when the abuse started, but it stopped when Appellant and her mother separated. She felt safe when Appellant was not around anymore, as if she had no worries. When her mother and Appellant started to get back together, she told her mother that she did not want him back. Her mother asked her why she did not like Appellant. Because she did not want to go through the abuse again, C.M. told her mother what Appellant had been doing to her.

A.G. testified that she and Appellant split up for about a year, but then decided to get back together. C.M. was angry that they were getting back together. A.G. talked with C.M. to find out why C.M. did not want Appellant around. At first, C.M. was very quiet and did not want to tell A.G. anything. A.G. asked her if Appellant ever did anything that she did not like. C.M. did not respond; she looked like she wanted to cry. A.G. asked her if Appellant had ever touched her anywhere that she did not want to be touched, and C.M. nodded her head "yes." A.G. continued to ask C.M. questions, and C.M. indicated that Appellant had touched her on the front of her bottom part, that he had touched her with his hands, and that he had put his thing in her thing. She said that it happened while her mother was asleep or was at work. Appellant put a blanket over her face and told her that if she told anyone he would suffocate her.

Dr. Beth Nauret, a pediatrician and medical director of the Child Assessment Program of the Austin Diagnostic Clinic, examined C.M. C.M. told Dr. Nauret that Appellant began touching her when she was about five years old and that he touched her on multiple occasions. Appellant touched her in her bedroom. C.M. told her that he touched her private part with his private part, with his hand, and

4

with his mouth. She showed Dr. Nauret where her private part was located on her body and said that Appellant's private part went inside her private part. He stopped touching her when she was ten years old. C.M. told Dr. Nauret that no one else had touched her private part.

Dr. Nauret's examination of C.M. was normal, and she did not see any injuries on C.M. She testified that it is common to see no injuries, even when penetration has occurred, and that a normal examination does not prove, or disprove, that a child has been abused.

Appellant testified that he did not sexually assault C.M. He thought that C.M. hated him because of the relationship he had with her mother and maybe because he bought things for his biological children. He thought that A.G. may have lied because she was not the only woman in his life and because he was not taking care of her like he was taking care of the other woman.

Appellant argues that the evidence is insufficient to support his convictions for aggravated sexual assault of a child because the evidence did not show that Appellant penetrated C.M.'s sexual organ with his sexual organ, in one count, and with his tongue, in the other count. Appellant contends that there is no evidence in the record that C.M. understood the meaning of the terms that she used to describe the sexual abuse.

Dr. Nauret testified that the female sexual organ is comprised of the clitoris, the labia majora, the labia minora, the hymen, and the vagina. She explained that penetration of the female sexual organ occurs when something goes past the labia majora. In her experience, children just call everything "inside," even though they do not fully understand the concept. She explained that children do not really know the difference between something that goes just barely inside the first layer of the labia and something that goes inside the vagina—"[i]t's just in as far as they're concerned."

5

The Court of Criminal Appeals has described penetration to mean contact that is "more intrusive than contact with [the] outer vaginal lips," such as "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Thus, the State is not required to show that the vagina itself was penetrated, but only that the first layer of the labia was penetrated. Dr. Nauret's testimony that children do not understand the different layers of the sexual organ to know what layer has actually been penetrated does not render the evidence insufficient to show that penetration occurred. A child victim is not expected to testify with the same clarity and ability as is expected of adults. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). C.M. testified that Appellant's penis and tongue went inside her vagina. Regardless of whether she understood what the medical term "vagina" meant, the jury could have found that penetration of her sexual organ occurred.

Appellant also argues that, because C.M. told neither her mother nor Dr. Nauret that Appellant's tongue went inside her vagina, her story is inconsistent and that, thus, the evidence is insufficient to support the conviction. However, it was within the jury's province to resolve any inconsistencies or conflicts between the witnesses' testimony. *Jackson*, 443 U.S. at 319. Furthermore, the complainant's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013). We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant penetrated C.M.'s sexual organ with his sexual organ and with his tongue. We overrule Appellant's first and second issues.

In his third issue, Appellant asserts that the trial court erred when it admitted hearsay testimony of A.G., as the outcry witness, because it did not first hold a

6

hearing to determine whether the outcry statement was reliable. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 802. "Hearsay is not admissible except as provided by statute or [the Rules of Evidence] or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 803.

One such exception is embodied in Article 38.072 of the Texas Code of Criminal Procedure. Article 38.072 provides that a child victim's "outcry" statements are not inadmissible because of the hearsay rule if (1) the State gives the defendant proper notice; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statements are reliable based on the time, content, and circumstances of the statements; and (3) the child testifies. CRIM. PROC. art. 38.072. An "outcry" statement is defined as a victim's statement that describes the alleged offense and that is made to the first person, eighteen years of age or older, to whom the victim tells about the offense. *Id.*

The State contends that Appellant waived error because defense counsel made only a general hearsay objection, did not object under Article 38.072, and did not request a hearing. Appellant directs us to *Long v. State*, 800 S.W.2d 545 (Tex. Crim. App. 1990), for the proposition that a general hearsay objection is sufficient to preserve error under Article 38.072.

In *Long*, the court held that the defendant's objection adequately apprised the trial court of his complaint even though he did not specifically object under Article 38.072 or on the grounds that the trial court failed to hold a hearing to determine the outcry witness's reliability. *Long*, 800 S.W.2d at 548. The court reasoned, "In the context of this record, where the objection was raised immediately before the child's mother began to testify as to what her daughter told her, we cannot imagine that the trial court somehow failed to comprehend the nature of [the defendant's] hearsay complaint." *Id.*

7

Here, when defense counsel objected, A.G. had not begun testifying about what C.M. told her regarding the abuse. A.G. was testifying about how C.M. did not like Appellant and did not want her and Appellant to get back together. She testified that C.M. wrote her letters each time that she got back together with Appellant. When defense counsel asked to approach the bench, the following exchange took place outside the jury's presence:

> [DEFENSE COUNSEL]: I guess we don't need to approach anymore. Your Honor, I would respectfully object to the statements that are being made by some of these -- these hearsay statements. The victim is here to testify. She can answer all these questions.
>
> She's speculating. She's saying things that may be taken out of context. It's a clear hearsay objection, Your Honor. We didn't even have a chance to hear an exception to the rule or anything like that. If it continues, it's certainly more prejudicial than it is probative, in my opinion.
>
> THE COURT: [Prosecutor]?
>
> PROSECUTOR: One of the things, with respect to whatever the defendant said, it's an exception to the hearsay rule, which is party-opponent.
>
> With respect to what the witness is testifying as far as the child goes, it's speculation, this goes to mom's personal knowledge and what she observes of her child, any notices in attitude, demeanor, any changes, so she can testify to that.
>
> And as far as what she's about to start telling us is what [C.M.] told her, again, that's an exception to the hearsay rule under the outcry exception.
>
> THE COURT: I'm going to overrule the objection. The defendant's statements are all admissible. I believe the daughter's statements both fall -- or we're about to reach the outcry, but also I don't believe any of them are actually being -- they were being offered to show the witness' state of mind as to why she began this

8

process. I think they're necessary to show why she began further questioning. We will -- the speculation was with respect to the witness' state of mind, actually, ultimately, and we can clear that up. I can give a limiting instruction with respect to that. But I think to the extent that they were to show the witness' state of mind, they're admissible.

After this exchange, the State began to ask A.G. what C.M. told her in response to questions that A.G. asked C.M. about why she did not like Appellant. In our sufficiency review above, we have outlined A.G.'s testimony regarding what C.M. told her. Based on the exchange between the trial court and counsel, we cannot say that the trial court did not consider Appellant's hearsay objection in the context of whether A.G.'s testimony as an outcry witness was admissible. Thus, because the trial court did not first hold a hearing to determine whether the statements were reliable, as required by the statute, the trial court erred when it admitted the statements made by C.M. to A.G. regarding the alleged abuse.

Having determined that the trial court erred, we must now determine whether the error is reversible under TEX. R. APP. P. 44.2(b), which applies to nonconstitutional errors. Pursuant to Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An accused's substantial rights are not affected by the erroneous admission of evidence if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

Here, C.M. testified that she told her mother about the abuse when her mother and Appellant were getting back together. She testified that she did not want them to get back together because she did not want to go through the abuse again. Her mother asked her why she did not like Appellant and also asked her if Appellant had touched her in any way. C.M. did not tell her mother many details about the abuse. After she told her mother, her mother called Appellant to question him and also reported the abuse to law enforcement personnel.

C.M. described the abuse to the jury. She testified that Appellant put his penis and tongue in her vagina on multiple occasions and that it happened at night or while her mother was at work. She also told the jury that Appellant put a blanket over her and told her that, if she told anyone, he would hurt her, her mother, or her brother. C.M.'s testimony proved the same facts that were admitted through A.G.'s hearsay testimony. Thus, any error was harmless. *See Brooks*, 990 S.W.2d at 287. We overrule Appellant's third issue.

In his fifth issue, Appellant argues that the trial court erred when it admitted the hearsay testimony of Dr. Nauret because C.M.'s statements to Dr. Nauret were not made for the purpose of medical treatment but were instead made for the purpose of a criminal investigation. "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are also not excluded by the hearsay rule. TEX. R. EVID. 803(4). The proponent of the evidence must show that the declarant was aware that the statements were made for the purpose of medical diagnosis or treatment, that the declarant understood that proper diagnosis or treatment depended on the truthfulness of the statements, and that the medical care provider relied on the statements to treat the declarant. *Taylor v. State*, 268 S.W.3d 571, 588–91 (Tex. Crim. App. 2008).

10

In order to preserve error for appellate review, a party must object each time inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Here, the State asked Dr. Nauret to tell the jury what C.M. told her. Defense counsel objected, and the trial court overruled the objection. The trial court instructed the jury that it was not to consider the statements for the truth of the matter asserted, but only to show the basis for treatment and diagnosis. Dr. Nauret testified that C.M. told her that C.M. had come to see her because C.M. was touched by "Matthew's daddy, Giovanni." Other evidence at trial showed that Matthew was the son of A.G. and Appellant and that Appellant went by the name Giovanni. Appellant did not make any other hearsay objections during Dr. Nauret's testimony, nor did he request a running objection. Because Appellant failed to object to any other portion of Dr. Nauret's testimony concerning what C.M. told her, he has not preserved error regarding any other statement.

Appellant did preserve error as to the statement that C.M. came to see Dr. Nauret because Giovanni touched her. However, even if we assume that this statement was not made for the purpose of medical diagnosis and treatment and that the trial court erred when it admitted the statement, the error was harmless because the same statement was contained in Dr. Nauret's report that the trial court admitted without objection. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) ("an error in admission of evidence is cured where the same evidence comes in elsewhere without objection"). Furthermore, the trial court instructed the jury that it was not to consider the statement for the truth of the matter asserted. We overrule Appellant's fifth issue.

In his fourth issue, Appellant argues that his counsel was ineffective because counsel failed to request that the State make an election as to which act it was relying on for conviction. In order to determine whether Appellant's trial counsel rendered ineffective assistance at trial, we must determine whether Appellant has

11

shown that his counsel's representation fell below an objective standard of reasonableness and, if so, whether there is a reasonable probability that the result would have been different but for trial counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Where the record is silent, we cannot speculate on trial counsel's strategy. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Thus, an allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Generally, the record on direct appeal will not be sufficient to show that trial counsel's performance was so lacking as to overcome the presumption of reasonable conduct. *Id.* at 813–14.

Appellant directs us to the concurring opinion in *Yzaguirre v. State*, 957 S.W.2d 38 (Tex. Crim. App. 1997), for the proposition that defense counsel may automatically be ineffective when he fails to request an election because there is no imaginable strategic motivation for such a decision. The author of the concurring opinion did not write that counsel *was* ineffective, he opined that counsel was *probably* ineffective. *Yzaguirre*, 957 S.W.2d at 40 (Meyers, J., concurring). Furthermore, the issue was not specifically before the court, and the majority did not address it. We do not agree with Appellant's argument that there is no imaginable strategic motivation for defense counsel's decision to not request an election. As the State points out, defense counsel could have strategically chosen not to request an election to avoid future prosecution for the other acts of abuse

12

that C.M. described. The burden is on Appellant to present a record that establishes why trial counsel acted the way he did. Appellant has not overcome the presumption that his counsel acted within the wide range of reasonable professional assistance, and, thus, we cannot conclude that defense counsel's performance was deficient. *See, e.g.*, *Estevane v. State*, No. 03-04-00257-CR, 2006 WL 504903, at *3 (Tex. App.—Austin Mar. 2, 2006, pet. ref'd) (failure to request an election could have been strategic and does not automatically amount to ineffective assistance of counsel). We overrule Appellant's fourth issue.

In his final issue, Appellant asserts that the trial court erred when it did not declare a mistrial after the State, while cross-examining Appellant during the guilt/innocence phase of the trial, wrongly accused him of having a prior conviction. The State questioned Appellant about a conviction for failure to identify himself to law enforcement. Appellant denied that he was convicted of the prior offense of failure to identify to a police officer. He told the prosecutor that it was not him, but that it was his brother. After a recess, the prosecutor informed the trial court that he had made a mistake and that the fingerprint examiner had verified that Appellant was not the same person in the judgment of conviction. The trial court instructed the jury to disregard the testimony.

Defense counsel never objected to the prosecutor's line of questioning regarding the prior conviction, nor did he argue that the instruction to disregard was not sufficient to cure the error made by the State. Defense counsel also never moved for a mistrial. A motion for mistrial must be timely and specific in order to preserve error for appellate review. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Because Appellant did not present his complaint to the trial court, he has waived error. TEX. R. APP. P. 33.1. We overrule Appellant's sixth issue.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

January 9, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.